OPINION OF THE COURT
Jack Turret, J,
This Uniform Support of Dependents Law proceeding brought under article 3-A of the Domestic Relations Law was commenced on May 8,1981. Petitioner, former wife of respondent, is seeking enforcement of respondent’s obligation to support their two children under a judgment of divorce of the Superior Court, Judicial District of Fairfield, Connecticut, dated June 13,1979. This judgment obligates *740 respondent to pay $1,740 per month for alimony and child support. Respondent initially appeared pro se. Petitioner appeared with the Corporation Counsel as her statutory representative. Reference was made to the hearing examiner (Family Ct Act, § 439).
On July 29, 1981, an agreement was reached before the hearing examiner that provided for temporary support ($700 per month) and a contingent payroll deduction order. It was subsequently reconfirmed by the respondent on November 24, 1981, January 6, 1982 and March 11, 1982. On June 14, 1982, the hearing examiner issued a report recommending modification of the temporary order to $500 per month and holding arrears in abeyance. Objections were filed and heard by me on July 28, 1982. At which time, while represented by counsel for the first time, respondent asserted orally that section 1673 of title 15 of the United States Code prohibits entry of any payroll deduction order in excess of 50% of his disposable income.[2] Ruling from the Bench, this court declined to vacate the payroll deduction order and ordered a hearing de novo as the record made before the hearing examiner was insufficient. An order was signed on the following day, July 29, 1982, making the payroll deduction order “effective at once, first payment August 1, 1982. Arrears are fixed at $2,100 as of June 1, 1982” (the total of three payments).
On August 25, 1982, a hearing de novo before the hearing examiner began. It was continued to October 4, 1982 when decision was reserved. On October 5, 1982, respondent brought on an order to show cause seeking to have the payroll deduction order vacated alleging it was in violation of section 1673 of title 15 of the United States Code. Argument on this application was heard on October 8, 1982 with both sides given an opportunity for final submissions.
On November 3,1982, though the hearing examiner had not yet rendered a decision, the court ruled on respondent’s application. Since the supremacy clause was involved, visa-vis section 1673 of title 15 of the United States Code, *741 and because of petitioner’s serious allegation that respondent was attempting to avoid or minimize his duty to support by purposefully reducing his stated or actual income, the court felt an interim ruling was warranted pending issuance of the hearing examiner’s report. Noting the court’s order of July 29, 1982 was grounded on an agreement to pay, that the agreement was entered into freely by a businessman well versed in the effects and implications of more complicated instruments, and respondent without duress or other restraint signed and subsequently reaffirmed the agreement after being allocuted as to his right to counsel and waiving that right, the court refused to vacate or modify either the temporary order of support, or its contingent payroll deduction order.[3] The court also held, pending further countervailing direction from this court, respondent’s employer could comply with the Consumer Credit Protection Act guidelines (see Bigness v Obit, 112 Misc 2d 1078).
On November 29, 1982, the hearing examiner rendered her report. Based on the evidence adduced before her, the hearing examiner found: (1) “[Respondent is attempting to minimize his duty to support by purposefully reducing his stated or actual income”; (2) “[Respondent has skills and experience in an area where the earning opportunities for someone of his background are substantially higher”; (3) “arrears were $5,054.62 as of December 2, 1982”; and (4) “[Respondent has the potential earning ability to pay an order of support of $800 per month”.
Typical of respondent’s actions which led the hearing examiner to make such findings were his selling an antique car for $8,100 without a cent going for child support; his failure to comply with the financial disclosure request made by Corporation Counsel; the fact that respondent holds a job as a stock and commodities broker for Shearson Loeb Rhodes, where from 1979 to 1980, he was making approximately $45,000 per year, and that after 16 years in the profession, he presently reports an income of $15,000 per year.
*742 The hearing examiner thus recommended: (1) arrears be fixed at $5,054.63 as of December 2, 1982; (2) an order of support for the two children of $800 per month plus an additional $50 per month on arrears, payable to the support collection unit, effective December 21,1982; (3) vacating the payroll deduction order in effect with a contingent payroll deduction order as a replacement; and (4) respondent be directed to submit proof of his compliance with paragraphs 3 and 4 of the divorce decree, pertaining to medical insurance coverage.
Both sides filed objections. The matter was referred to this court in light of its prior orders.
Respondent on the return date of the objections was granted an opportunity to submit a memorandum of law supporting his contentions two weeks after receiving transcripts of the tapes made of the hearing. Well past respondent’s attorney’s receipt of the transcripts of the tapes and well past the additional time granted at said attorney’s request, no papers have been received.
The court concurs with the hearing examiner’s findings and recommendations except as to: (1) the payroll deduction order; (2) arrears.
PAYROLL DEDUCTION ORDER
Based on the evidence adduced in all proceedings heretofore held, the court confirms the hearing examiner’s finding that respondent “is attempting to minimize his duty to support”. Precisely for this reason, the court rejects the hearing examiner’s recommendation that the payroll deduction order in effect be vacated and a contingent one substituted.
It is a well-established equitable principle that one should not be permitted to take advantage of his own wrong (Stearns Co. v United States, 291 US 54, 61-62). On this principle, an individual may be denied use of a statute by his acts (see Simcuski v Saeli, 44 NY2d 442). Though not a court of equity, Family Court should strive to do equitable justice (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 115, p 22; cf. Pinto v Pinto, 91 NYS2d 124).
*743 One who purposefully minimizes his income, may have his duty to support based upon potential not just actual earnings (see Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29 A, Supp Pamph, Family Ct Act, § 442, pp 169-170, and cases cited therein). To afford respondent the relief of the Consumer Credit Protection Act (US Code, tit 15, § 1673), would be to allow him to circumvent this legal obligation through his own acts.
The legislative history of the Consumer Credit Protection Act (US Code, tit 15,- §§ 1671-1677) indicates a dual purpose intended by Congress. On the one hand, Congress wished to protect debtors from unscrupulous creditors, and on the other, to assure that dependent children receive support (Matter of Liedka v Liedka, 101 Misc 2d 305). Congress had certain types of creditors in mind in enacting this legislation. It did not seek to shackle such legitimate debt collection as child support. “Its purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restraints on ethical debt collectors.” (Senate Report No. 95-382, 95th Congress, 1st Session, US Code, Cong & Admin News, 1977, vol 2, pp 1695, 1696.) Protection of debtors was balanced by allowing for a higher percentage of payroll deduction for child support. Under section 1673 (subd [b], par [2]), between 50% to 65% of a spouse’s disposable income may be garnished, as opposed to only 25% for other creditors. Congress wanted to “assure an effective program of child support.” (Senate Report No. 93-1356, 93rd Congress, 2d Session, US Code Cong & Admin News, 1974, vol 4, pp 8133, 8134 [hereinafter Sen Rep No. 93-1356].)
Further, Congress passed section 659 of title 42 of the United States Code — enforcement of legal obligations to provide child support. Under section 659, garnishment proceedings against the United States and its agencies for child support are allowed. As with section 1673, Congress wanted to “assure an effective program of child support.” (Sen Rep No. 93-1356, US Code Cong & Admin News, 1974, vol 4, p 8134.) Congress in passing such legislation was cognizant of the growing number of single mothers with dependent children receiving aid to families with *744 dependent children (hereinafter AFDC). Of the 11 million recipients who are on AFDC, 4 out of 5 are on the rolls because they have been deprived of the support of a parent. (Sen Rep No. 93-1356.) Congress did not intend that a debtor-spouse improperly shield himself from a valid child support order by use of section 1673. Rather, Congress intended that child support payments be made without unduly hampering the debtor-spouse’s financial base. Respondent will not be allowed to thwart both Federal and New York State policy to assure support of dependents by perverting the Consumer Credit Protection Act. The payroll deduction order in effect should be modified to reflect the final order of support.
ARREARS
The record reveals my order dated March 11, 1982 made on consent, wherein respondent agreed to pay $1,750 in arrears and $700 for the months of February and March. Another order was made by me on July 29, 1982, indicating arrears of $2,100 for the months April, May and June, 1982, The hearing examiner fixed arrears at $5,054.63 pursuant to a support collection unit statement of arrears dated December 2, 1982. That amount is confirmed.
An order of support must be effective as of the date of the filing of the petition (Family Ct Act, § 449), and respondent has not shown “good cause” for canceling the retroactive amount of support due (Family Ct Act, § 458).
An order to this effect will be settled on notice, fixing arrears from the filing of the petition to the date of the order. A computation should be annexed.

. The Consumer Credit Protection Act as amended by section 1673 (subd [b], par [2], cl [A]) of title 15 of the United States Code is applicable to garnishment for support. (General Motors Acceptance Corp. v Metropolitan Opera Assn., 98 Misc 2d 307; Matter of Liedka v Liedka, 101 Misc 2d 305; see, also, V v S, 579 SW2d 149 [Mo].)

. A stipulation is a contract between parties. (Yonkers Fur Dressing Co. v Royal Ins. Co., 247 NY 435; Bond v Bond, 260 App Div 781, mot for rearg den 261 App Div 835.) Such a “contract” may not be the type of judicial transaction Congress contemplated the Consumer Credit Protection Act overseeing (see Western v Hodgson, 494 F2d 379).