534 A.2d 1057

John M. METZGER

v.

Ana Maria METZGER, Appellant.

Ana Maria METZGER, Appellant,

v.

John Mark METZGER.

John M. METZGER, Appellant,

v.

Ana Maria METZGER.

Ana Maria METZGER

v.

John Mark METZGER, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 15, 1987.

Filed Nov. 10, 1987.

Reargument Denied Jan. 6, 1988.

B. Ryland Wiggs, III, Bethlehem, for appellant in Nos. 292 and 293 and appellee in Nos. 372 and 373.

Arthur L. Jenkins, Jr., Norristown, for appellant in Nos. 372 and 373 and appellee in Nos. 292 and 293.

Before McEWEN, OLSZEWSKI and DEL SOLE, JJ.

DEL SOLE, Judge:

On September 23, 1980, John Metzger, hereinafter referred to as "Husband", filed a complaint for divorce seeking equitable distribution. Two days later, Ana Maria Diaz Metzger, hereinafter referred to as "Wife", also filed a divorce complaint in which she sought equitable distribution, alimony pendente lite, alimony, counsel fees, and expenses. Upon request of Husband, a bifurcated divorce was granted; the decree of divorce pursuant to 23 P.S. § 201(d) of the Divorce Code was entered on December 28, 1984. The remaining disputes associated with the parties' divorce were referred to a Master. Following several hearings, the Master's Report and Recommendation was filed on December 23, 1985. Both parties proceeded to file exceptions to the Report. Following argument, the trial court filed an order and opinion on December 30, 1986.

Although raised by neither party, we must determine whether or not Wife has preserved the majority of the

issues she now advances on appeal. Pa.R.C.P. 1920.55 sets out the time limits to be followed when filing exceptions to a master's report:

> [w]ithin ten days after notice of the filing of the master's report *has been mailed,* exceptions may be filed by any party to the report ...

The record reveals that the Master's Report was filed and mailed to the parties on December 23, 1985. Timely exceptions were filed by Husband on December 31, 1985. However, Wife did not file her exceptions until January 3, 1986. Recently, in *Sipowicz v. Sipowicz,* 358 Pa.Super. 319, 517 A.2d 960 (1986), we held that a party's failure to file timely exceptions within ten days as required by Rule 1920.55 resulted in a waiver of those claims of error raised on appeal. *Id.,* 358 Pa.Superior Ct. at 324, 517 A.2d at 963. Instantly, Wife's exceptions were filed 11 days after the Master's Report was mailed. Therefore, all of the issues which Wife could have raised in timely exceptions to the Master's Reports are now considered waived on appeal.[1]

■ We are mindful, though, that no exceptions need be filed to preserve for appeal issues which claim that the trial court erred when it entered an order which altered the terms of the master's report and recommendation. This is based on the fact that Rule 1920.55(c) does not permit the filing of motions for post-trial relief after a decree has been

---

1. The trial court states in its opinion that Wife received written notice of the filing of the Master's Report on December 26, 1985 and that Wife's exceptions were filed on January 3, 1986. From these dates, the trial court concluded that Wife's exceptions were timely. However, we must point out that the ten day period begins on the date *notice is mailed* to the parties, not when notice is received. Wife's tardiness is further underscored by the fact that the "Notice of Filing Report by the Master" provided specific instructions for filing exceptions:

   > [e]xceptions to the Master's Report and Recommendation must be filed within ten days from the *date of service of this notice is upon you* ...

   These directions are compliance with Pa.R.C.P. 440(b) which provides:

   > [s]ervice by mail of legal papers other than original process is *complete upon mailing.*

   Accordingly, the trial court's observations with respect to this issue are erroneous.

entered. Accordingly, the first opportunity to raise certain objections to the trial court's treatment of a divorce case is through a direct appeal. Such claims are therefore preserved. *Benson v. Benson,* 357 Pa.Super. 166, 515 A.2d 917 (1986).

As stated, *supra,* we shall not address the plethora of issues raised by Wife which challenge the trial court's adoption of particular portions of the Master's Report. However, Wife's issue with respect to the trial court's determination that she share in the costs associated with the parties' divorce is preserved insofar as the first time it could have been raised was by direct appeal. We now turn to the issues raised by the parties.

### Husband's Navy Pension

Husband argues that the trial court erred in ruling that his Naval pension was marital property subject to equitable distribution. It is Husband's position that military pensions are not property subject to division in adjudications involving marital property. Husband relies upon the Uniformed Services Former Spouses Protection Act (USFSPA), 10 U.S.C. § 1408 (1986) which states:

> [i]f the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay, payments may not be made under this section to the extent that they include an amount resulting from the treatment by the court under subsection (c) of disposable retired or retainer pay of the member as property of the member or property of the member and his spouse.

10 U.S.C. § 1408(d)(2) (1986). Subsection (c) of § 1408 provides:

> a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

Husband claims that Wife was not married to him during ten years of his credible service in the military; therefore, she is barred by the Act from receiving any portion of the Naval pension. We disagree.

We note that the specific provisions found in § 1408 refer only to court orders which concern *payments* made pursuant to a military pension after June 25, 1981. Instantly, the trial court's decision with respect to the Naval pension did not affect any payments which Husband may receive from the plan. Rather, the trial court's formula in valuing the Naval pension for equitable distribution purposes—the "immediate offset method"—would determine *only that portion of the pension which accrued during the marriage.* Clearly, § 1408 of the Act does not speak to the equitable distribution of a military pension and is not applicable to the case at bar.

■ Having decided that a Naval pension may be subject to equitable distribution, we must address Husband's claim that the pension was earned prior to the parties' marriage. "Each spouse has a reasonable expectation of enjoying the monies received from an employee retirement fund." *Braderman v. Braderman*, 339 Pa.Super. 185, 194, 488 A.2d 613, 617 (1985). In *Flynn v. Flynn*, 341 Pa.Super. 76, 83, 491 A.2d 156, 160 (1985), we commented on the reasoning upon which this general rule is grounded:

[s]ince a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it constitutes marital property. This determination is made without regard to the possibly contingent nature of the pension, whether or not it has vested or matured.

Based on this analysis, the only time span which is relevant for equitable distribution purposes will be the total period of time Husband participated in the pension "from date of marriage until date of separation." *LaBuda v. LaBuda*, 349 Pa.Super. 524, 536, n. 9, 503 A.2d 971, 977, n. 9 (1986). *See Braderman, supra*, 339 Pa.Superior Ct. at 198, 488 A.2d at 619. This is true insofar as all other excluded time represents periods in which the Naval pension

was *not* acquired with funds otherwise available to the parties during marriage. In the case *sub judice*, Wife will be eligible to receive the extrapolated value of the pension from the parties' date of marriage on February 25, 1972 until Husband's June 30, 1974 retirement from the Navy.

■ We note, however, that the trial court directed Husband to submit opinion proof of the pension's value at the time of separation. This decision was based on the fact that no testimony was admitted into evidence with respect to the value of the pension plan. In fact, the record does not reflect any substantial discussion of Husband's pension at all. In *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984), a similar situation occurred. In that case, an actuary testified at the Master's hearing; however, when the witness was asked what was his opinion of the value of the husband's pension, the wife's counsel objected. Subsequent to the hearing, the actuary submitted a report to the wife's counsel which estimated the pension's value. This report was later used by the court en banc in dividing the pension fund. On appeal, this Court criticized the trial court's reliance on this report insofar as it was never actually admitted into evidence. *Id.*, 332 Pa.Superior Ct. at 532–533, 481 A.2d at 916.

We are of the opinion that it would be improper for the trial court to rely on the opinion proof submitted by Husband without it first being admitted into evidence and subject to challenge by Wife. For this reason, we must remand the case to the trial court for a hearing on the present value of the Navy pension.

### 65/35 Distribution

■ Husband submits that the trial court erred in concluding that the division of certain marital property would be 65% to Husband and 35% to Wife. Previously, the Master recommended that the division should be 80% and 20%, respectively. We disagree.

We begin with our appellate scope of review. It is well established in this Commonwealth that an order determining equitable distribution of marital property shall not be

reversed absent a finding that the trial court abused its discretion. *Baraff v. Baraff,* 338 Pa.Super. 203, 210, 487 A.2d 925, 929 (1985). "Under this standard, we do not usurp the hearing court's duty as fact finder. Rather, we apply the legislative guidelines of the Divorce Code to the record to determine whether or not the hearing court has abused its discretions." *Barnhart v. Barnhart,* 343 Pa.Super. 234, 237, 494 A.2d 443, 444 (1985).

By his opinion, the trial judge considered the relevant history of the instant case. This review was guided by the relevant factors contained in § 401(d) of the Divorce Code.[2] The trial court duly recognized the health, age, employment, and financial prospects of both parties. Of particular importance, testimony concerning Wife's ability to work was studied. Wife's health was found to be fair; she was under the supervision of various physicians for physical and emotional problems. Despite Wife's testimony that she is unfit to work, no evidence was submitted which would substantiate that claim. The trial court recognized that Wife holds a doctorate degree in education and had taught as an associate professor of language at Muhlenberg College. Further, Husband's economic expert opined that,

2. The relevant factors are as follows:
    (1) The length of the marriage.
    (2) Any prior marriage of either party.
    (3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.
    (4) The contribution by one party to the education, training, or increased earning power of the other party.
    (5) The opportunity of each party for future acquisitions of capital assets and income.
    (6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.
    (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as a homemaker.
    (8) The value of the property set apart to each party.
    (9) The standard of living of the parties established during the marriage.
    (10) The economic circumstances of each party at the time the division of property is to become effective.
  23 P.S. § 401(d).

based on her education and work experience, Wife was capable of commanding a salary between $12,000 and $15,000 per year. Wife's other sources of income were also closely examined.

We have conducted an independent review of the record so that all aspects of this case may be scrutinized. Upon deliberation, we find that the trial court's adjustment of the Master's original distribution ratio from 80/20 to 65/35 reflects an insightful understanding of the various circumstances associated with each party's social and economic conditions. Therefore, we find no abuse of discretion.

### Oakhurst Lots

■ Husband posits that the trial court erred in awarding Wife a 35% share of the increase in value of certain real estate property referred to as the Oakhurst lots.[3] The Master's Report categorized this property as non-marital since the lots were acquired prior to the parties' marriage and the proceeds from the sale of the parcels were paid to Husband's first wife. The trial court disagreed and found that, while the lots were non-marital, any increase in their value during Husband's second marriage was subject to equitable distribution. Husband does not argue that Wife should not share in the increased value of the property accumulated during their marriage. Rather, it is averred that the trial court failed to consider that Husband only owned one-half of the Oakhurst property. Thus, Wife should be permitted to share in only one-half of the increased value of the property in question.

The record demonstrates that during the Master's hearing held on May 2, 1984, Husband was permitted to introduce into evidence an Agreement which he entered into with his first wife, Jean. Essentially, the Agreement was a property settlement with reference to the Oakhurst lots. The terms set out in that document provided that the net proceeds from the sale of the Oakhurst property would be

---

**3.** The Oakhurst lots consisted of 11.67 acres of real estate on which was situated a house and other structures. The record shows that, subsequent to its purchase in 1963, the property was subdivided and portions thereof were sold.

divided in the following manner. Husband's first wife would receive a lump sum payment of $50,000. After Husband's capital gain taxes were paid, the balance remaining was to be evenly divided between the two parties to the Agreement.

We are unable to determine whether or not the trial court in fact referred to the Agreement in calculating the distribution of the value of this property between Husband and Wife. The trial court opinion merely stated that:

> [i]n determining the increase in value to be distributed, an average yearly increase was determined from the number of years the lots were retained. This sum was then divided into the difference between the purchase price and the sale price. This annual average increase was then multiplied by four, being the number of years that the parties were married and living together.
>
> The increase in value of all eight lots totalled $22,417.00. Using the proportion of sixty-five/thrity (sic)-five, wife is to be awarded $7,846.30 while husband retains an interest of $14,571.70.

(Trial Court Opinion, 14).

Pa.R.App.P. 1925(a) mandates that an opinion filed by the trial court must specify "the reasons for the order, or for the rulings or other matters complained of, or shall specify in writing the place in the record where such reasons may be found." *See Nigrelli v. Cody*, 281 Pa.Super. 156, 421 A.2d 1195 (1980). Although the trial court did file a lengthy opinion discussing various aspects of this case, we find that we were not supplied with with sufficient information from which to conclude whether or not the apportionment between the parties was an abuse of discretion. Accordingly, we must remand this aspect of the case so that the trial court may file an opinion in which the valuation and distribution processes utilized with respect to the Oakhurst lots are sufficiently explained.

### Costs

■ The sole issue preserved by Wife on appeal is her argument that Husband should be directed to pay the

Master's fees and other costs incurred in the parties' litigation. The Master's Report originally recommended that Wife be accountable for $100, and Husband $2642.30, of the Master's fees. The remaining stenographic and other costs were to be paid by Husband. The trial court rejected this apportionment and decided that these costs were to be paid in the ratio of 65% to be paid by Husband and 35% to be paid by Wife. Wife maintains that Husband should be responsible for these amounts.

It is axiomatic that it is within the trial court's discretion to decide matters of alimony, equitable distribution, and assessment of fees. Before these decisions are disturbed by this Court, we must first find that the trial court plainly abused that discretion. *Chaney v. Chaney,* 343 Pa.Super. 77, 84, 493 A.2d 1382, 1385 (1985). Upon review of the record, we do not find that the trial court abused its discretion in apportioning these costs. Therefore, we shall not disturb that determination.

Order affirmed in part. Case remanded for proceedings and preparation of trial court opinion consistent with this opinion. Jurisdiction of this court retained. Jurisdiction of this panel relinquished.