**Michael E. LAWS, Appellee,**

v.

**Laura D. LAWS, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 2000.

Filed Aug. 23, 2000.

Gary D. Lampenfeld, Johnstown, for appellant.

Jennifer Richards, Johnstown, for appellee.

Before: POPOVICH, FORD ELLIOTT and BROSKY, JJ.

POPOVICH, J.:

¶ 1 This is an appeal from the order of the Court of Common Pleas, Cambria County, entered on December 2, 1999, which ordered Appellant Laura D. Laws to pay $425.00 per month in child support. Appellant contends that the trial court abused its discretion by ordering her to pay a confiscatory amount of support and by attaching her wages in an amount that exceeded the Consumer Credit Protection Act's limit on garnishment. For the following reasons, we affirm.

¶ 2 On May 12, 1999, Appellee Michael E. Laws filed for modification of the child support order for the parties' three minor children. At that time, Appellee had primary custody of the children. On June 16, 1999, a conference was held with the Domestic Relations section of the Cambria County Court of Common Pleas. By interim support order dated June 23, 1999, Appellant was directed to pay $400.00 in child support and $10.00 for arrears per month to Appellee.

¶ 3 Appellant appealed from the child support order, and a hearing was held before a master on August 13, 1999. At the time of the hearing, Appellee was employed as a welder for Johnstown America Corporation. On average, his net monthly income was $2,075.00. Appellant worked part-time at McDonald's Restaurant and earned $476.00 net income per month. However, the master found that Appellant had a monthly earning capacity of $800.00. This was based upon Appellant's prior earnings at Reese Brothers of $900.00 per month for telemarketing and her employment skills and experience as a secretary and a letter carrier. The master found that Appellant lost employment because of alcohol addiction and substance abuse. The master found that Appellant did not demonstrate that she was unable to work full-time and therefore assessed her an $800.00 per month earning capacity. In addition, the master determined that Appellee had reasonable day care expenses of $432.00 per month.

¶ 4 Based upon these findings, the master determined that Appellant was required to pay $311.00 per month in child support, as well as $151.00 per month towards day care. Since this amount of $462.00 per month exceeded 50% of her earning capacity, the master determined that Appellant was entitled to a deviation from the guidelines to a support amount of $400.00 per month. The final recommendation of the master was that Appellant was required to pay an aggregate total of $425.00 in child support, allocated as $300.00 for child support, $100.00 for day care expenses and $25.00 for arrears. Appellant's wages were to be attached in the amount of $212.49 semi-monthly.

¶ 5 The lower court adopted the master's recommendation. *See* Trial Court Order, 9/20/99. Appellant filed exceptions to said order. After oral argument was heard on November 15, 1999, the lower court dismissed Appellant's exceptions and affirmed the September 20th order in its entirety. Trial Court Order, 12/2/99, at 2. The lower court found that the master's determination that Appellant's net earning capacity of $800.00 per month was supported by evidence, that the master's deviation from the support guidelines was sufficient, that Appellant was not entitled to further deviation, and that the order was in accordance with the support guidelines. This appeal followed. *Id.* at 1.

¶ 6 Appellant raises the following issues for our review:

1. Whether the trial court abused its discretion ordering the Defendant–Appellant to pay child support in the amount of $425.00 per month, which is confiscatory under the circumstances in this case.

2. Whether the trial court abused its discretion in ordering that the De-

fendant–Appellant's wages be attached in the amount of $212.49 semi-monthly, which exceeds 65% of the Defendant–Appellant's disposable earnings.

Appellant's Brief, at 4.

■ ¶ 7 Before addressing the issues Appellant raised on appeal, we note that the lower court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b). Trial Court Order, 12/21/99. Appellant was directed to file a 1925(b) statement within 14 days of the lower court's order. Appellant failed to do so. The Pennsylvania Rules of Appellate Procedure state, "A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of." Pa.R.A.P. 1925(b). Additionally, in our recent case of *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655 (Pa.Super.2000), we held that when an appellant fails to present an issue for review properly by including it in a 1925(b) statement, that issue is waived, and we need not address it.

¶ 8 However, on January 31, 2000, Appellant filed with the lower court a motion for extension of time to file concise matters complained of on appeal. In the motion, Appellant claimed that she did not receive notice of the December 21 st order requesting a 1925(b) statement. Appellant's Motion, 1/31/00. The Pennsylvania Rules of Civil Procedure require that the prothonotary shall give written notice of the entry of any order and a copy of the order to each party's attorney of record. *See* Pa.R.Civ.P. 236(a)(2). Additionally, the prothonotary shall note in the docket the giving of said notice. *See* Pa.R.Civ.P. 236(b). After reviewing the record, we find that it is void of the notice of service of the order pursuant to Pa.R.Civ.P. 236. Since there is no evidence in the record that the prothonotary sent notice of the December 21 st order, we will not find that Appellant's issues for appeal have been waived.

¶ 9 Since Appellant did not file a 1925(b) statement, the lower court did not file a corresponding 1925(a) statement explaining the reasoning behind the order. *See* Trial Court Statement in Lieu of Opinion, 1/27/00. We reviewed the record and the issues for review and determined that since Appellant does not contest any factual issues, i.e., her earning capacity, the issues are questions of law, and we are able to review the issues absent a lower court opinion.

"When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." *Calabrese v. Calabrese*, 452 Pa.Super. 497, 682 A.2d 393, 395 (1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order. *Id.* An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. *Depp v. Holland*, 431 Pa.Super. 209, 636 A.2d 204, 205–06 (1994). *See also Funk v. Funk*, 376 Pa.Super. 76, 545 A.2d 326, 329 (1988). In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests. *Depp*, 636 A.2d at 206.

*Humphreys v. DeRoss*, 737 A.2d 775, 776–77 (Pa.Super.1999).

■ ¶ 10 First, Appellant contends that the lower court erred in ordering support payments that were confiscatory because the payments do not provide Appellant with reasonable living expenses. Relying on Pa.R.Civ.P.1910.16–2(e)(1)(C), Appellant argues that since her monthly income is less than $550.00, the court may order support only after considering the obligor's actual living expenses.

¶ 11 Rule 1910.16–2(e)(1)(C) states, "When the obligor's monthly net income is $550 or less, the court may award support only after consideration of the obligor's actual living expenses." Appellant's net monthly income at the time of the support hearing was approximately $476.00 per month. This was clearly below the $550 level, so the court would be required to consider living expenses. However, the Rules provide, "Where a party voluntarily assumes a lower paying job, there generally will be no effect on the support obligation. A party will ordinarily not be relieved of a support obligation by voluntarily quitting work or by being fired for cause." Pa.R.Civ.P.1910.16–2(d)(1). At the time of the support hearing, Appellant was working part-time. Previously, she had been working full-time and earned approximately $900.00 per month. The master found that Appellant did not demonstrate that she was unable to work full-time. Therefore, Appellant voluntarily reduced her income. "Ordinarily, a party who willfully fails to obtain appropriate employment will be considered to have an income equal to the parties earning capacity." Pa.R.Civ.P.1910.16–2(d)(4). The determination of a parent's ability to provide child support is based upon the parent's earning capacity rather than the parent's actual earnings. *See Kelly v. Kelly*, 430 Pa.Super. 31, 633 A.2d 218 (1993). Based upon her previous work experience and job skills, the master assessed an earning capacity of $800.00 per month. *See* Pa.R.Civ.P.1910.16–2(d)(4). (A party's age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity). The lower court incorporated the master's findings into the support order. Appellant does not contest the lower court's determination that she had an earning capacity of $800.00 per month.

¶ 12 Therefore, we find that the lower court did not err in failing to consider Appellant's actual living expenses because Appellant's earning capacity exceeds $550 and does not trigger Rule 1910.16–2(e)(1)(C).

¶ 13 Second, Appellant contends that the lower court abused its discretion by attaching Appellant's wages in an amount that exceeded the garnishment limit as permitted under federal law.

¶ 14 The Federal Consumer Credit Protection Law states that the maximum part of the aggregate disposable earnings of an individual for any workweek shall not exceed 65%. *See* 15 U.S.C.A. § 1673(b)(2)(B). "Disposable earnings" is defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C.A. § 1672(b). Earnings are defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise." 15 U.S.C.A. § 1672(a). Appellant argues that since her net monthly income was $476.00, the lower court violated this restriction on garnishment when it ordered her to pay $425.00 in child support that exceeded 65% of her disposable income.

¶ 15 After extensive review of Pennsylvania law, we have determined that the issue of whether the Federal Consumer Credit Protection Act's disposable earnings equates to Pennsylvania's earning capacity for the purpose of limitation on garnishment has not been addressed by the Pennsylvania Courts. After examining the purpose of the Consumer Credit Protection Act and the manner in which other jurisdictions handled this issue, we find that when an obligor's disposable earnings are less than his or her earning capacity because the obligor voluntarily reduced his or her income, the earning capacity should be used when determining the limit on garnishment of wages under the Consumer Credit Protection Act. In reaching this conclusion, we are guided by our concern that obligors could reduce or avoid their child support obligation by voluntarily re-

ducing their earnings so insufficient funds remained available for garnishment.

¶ 16 The legislative history of the Consumer Credit Protection Act, 15 U.S.C.A. §§ 1671–1677, indicates Congress intended a dual purpose regarding support payments: (1) to protect debtors from unscrupulous creditors and (2) to assure that dependent children receive support payments. Congress had certain types of creditors in mind in enacting this legislation. It did not seek to shackle such legitimate debt collection as child support. "Its purpose is to protect consumers from a host of unfair, harassing and deceptive debt collection practices without imposing unnecessary restraints on ethical debt collectors." Senate Report No. 95–382, 95th Cong. 1st session, 1977 U.S.Code Cong. & Ad.News 1695, 1696. Protection of debtors was balanced by allowing for a higher percentage of payroll deduction for child support. See 15 U.S.C.A. § 1673(b)(2)(A). Congress wanted "to assure an effective program of child support." Senate Report No. 93–1356, 93rd Cong.2d session, 1974 U.S.Code Cong. & Ad.News 8133, 8134.

¶ 17 When determining the intent of the Consumer Credit Protection Act regarding child support, we are persuaded by a similar case of New York State. In *Carol J. v. William J.*, 119 Misc.2d 739, 464 N.Y.S.2d 635 (Fam.Ct.1983), an obligor had his wages garnished to pay child support. The garnishment exceeded 50% of his disposable income. He argued that this violated the Consumer Credit Protection Act. However, the court noted that the obligor voluntarily minimized his earnings. The court held that an obligor could not rely on the Consumer Credit Protection Act provision prohibiting garnishment of wages exceeding 50% of his disposable income since such reliance would allow him to circumvent his legal obligation due to his own act. The court concluded, "Respondent will not be allowed to thwart both Federal and New York State policy to assure support of dependents by perverting the Consumer Credit Protection Act." *Carol J.*, 464 N.Y.S.2d at 638; *cf. Slivka v. Slivka*, 1996 WL 100854, 1996 Ohio App. LEXIS 873

(Ohio Ct.App., Cuyahoga County Mar. 7, 1996) (holding that an obligor's voluntary unemployment would not affect his child support payments).

¶ 18 The court in New York interpreted the Consumer Credit Protection Act as to not permit an obligor who has voluntarily reduced his or her income from reducing his or her child support payments by using the obligor's potential earnings not actual earnings.

> "One who purposefully minimizes his income, may have his duty to support based upon potential not just actual earnings. To afford respondent the relief of the Consumer Credit Protection Act would be to allow him to circumvent this legal obligation through his own acts."

*Carol J.*, 464 N.Y.S.2d at 638 (citations omitted).

¶ 19 Likewise, we are convinced that an obligor should not be permitted to circumvent child support payments by voluntarily taking an income reduction. Pennsylvania law provides an obligor's support payment will not be affected if the obligor voluntarily reduced his or her income. See Pa. R.Civ.P.1910.16–2(d)(1). The obligor who fails to gain appropriate employment will be considered to have an income equal to the obligor's earning capacity. See Pa. R.Civ.P.1910.16–2(d)(4). The Federal garnishment law does not expressly include such an adjustment. However, we are convinced that an obligor who voluntarily took an income reduction should not be able to circumvent a valid court order to pay child support by perverting the Consumer Credit Protection Act. Allowing such a result would undermine the power of Pennsylvania's child support orders and the dual purpose of the Consumer Credit Protection Act. We are guided in our determination by recognizing that the ultimate purpose of the child support order is to provide for the best interests and welfare of children from broken homes, and not to punish the obligor parent. See *Humphreys*, 737 A.2d at 779. In order to advance this purpose, we find that the

Consumer Credit Protection Act's garnishment limitation should equate disposable earnings with earning capacity as determined by Pa.R.Civ.P.1910.16–2(d)(4) when an obligor voluntarily reduces his or her earnings.

¶ 20 The record demonstrates that the lower court determined Appellant's earning capacity to be $800.00 per month. The maximum amount attachable under the Consumer Credit Protection Act ($800 × 65%) is $520 per month. Appellant was ordered to pay $425.00 per month. Therefore, we find that the trial court did not abuse its discretion in that the child support order does not exceed 65% of Appellant's monthly income. *Cf. Carol J.*, 464 N.Y.S.2d at 637 (court used obligor's previous annual income in determining child support award when obligor purposefully reduced his annual income from $45,000 to $15,000). *See also Slivka*, 1996 WL 100854, at *4, 1996 Ohio App. LEXIS 873, at *13 (court used obligor's earning capacity in lieu of disposable earnings in the computation for the garnishment limitation under the Consumer Credit Protection Act).

¶ 21 Order affirmed.[1]

---

1. We note that Appellee argued that Appellant's appeal should be quashed for failing to file a reproduced record. However, Appellant was granted leave to proceed *In Forma Pauperis*. The Rules of Appellate Procedure state that if a party is granted leave to proceed IFP, such party shall not be required to reproduce the record. *See* Pa.R.A.P. 2151(b). Therefore, we deny Appellee's request for this appeal to be dismissed.