J-A24023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| F.E.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.L.S., III | : | |
| | : | |
| Appellant | : | No. 1483 MDA 2017 |

Appeal from the Order Entered August 24, 2017
In the Court of Common Pleas of Franklin County Domestic Relations at
No(s): DRS 2015-363,
PACSES 275115394

BEFORE: OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED APRIL 05, 2019**

A.L.S., III ("Father") appeals from the order entered August 24, 2017, denying his Motion to Suspend and Exceptions to the order of February 23, 2017, which imposed child and spousal support. Father claims he was denied due process when he was required to proceed *pro se* at the *de novo* hearing on the support petition filed by F.E.S. ("Mother") and that there was insufficient evidence to sustain the resulting support order. We quash the appeal as it relates to the order of spousal support, as that order is interlocutory due to the parties' pending divorce, and affirm the order as it relates to child support.

Mother and Father were married in 1986, and have one dependent child, M.S., born in 1998 ("Child").[1] The parties separated in 2014, and Mother filed for support. After a hearing in July 2015, a domestic relations officer entered an order requiring Father to pay monthly spousal support, child support, and arrearages. Although Father appealed, the parties reconciled, and stipulated to terminating support and arrears and withdrawing the appeal.

The reconciliation was brief, and Mother initiated the instant support action by filing a new complaint for spousal and child support on August 9, 2016. A conference was held before a domestic relations officer on October 24, 2016, at which both parties were represented by counsel. Father, a self-employed contractor, claimed during the conference that he was unemployed and disabled, and was in the process of appealing the denial of Social Security disability benefits. The conference was continued until November 14, 2016, to allow Father to obtain a physician's form verifying his disability. Father did not provide a physician's form at the second portion of the conference.

The officer entered an order requiring Father to pay monthly child support and arrears. The officer concluded that Mother, who is unemployed and home-schools Child, has no income. The officer found that Father had an annual earning capacity of $17,000, based on his 2014 federal income tax return and his Social Security earning statements from 2008 to 2012, and that Father had a monthly income of $790 from a rental property. The order

_____

[1] The record indicates that the parties have other children who were no longer minors when the support action commenced.

specified that Father was not required to pay spousal support because the amount of spousal support calculated by the officer was offset by the amount Father was paying on the mortgage of the marital home. The order also specified that Father had not disputed Mother's entitlement to spousal support.

Father filed a *pro se* appeal for a *de novo* hearing on December 5, 2016. In the demand, Father stated that his lawyer had "dropped" representation of Father on December 1, and that Father was looking for new representation. It also stated that Father intended to introduce as evidence at the appeal "yet to be determined Drs. reports." Mother filed a demand for an appeal hearing as well, on the basis that the officer erred in calculating Father's mortgage adjustment.

The *de novo* hearing on the support petition was held before a support Master on February 8, 2017.[2] Father appeared without counsel, saying that his prior counsel had "dropped [him] three days before the appeal [period expired]." N.T., 2/8/17, at 3. Mother's attorney asserted that Father's counsel, who had not officially withdrawn, had told her that Father requested she not represent him on the appeal. *Id.* at 31; **see also id.** at 4-5. Father responded that he "did not really release her on this matter." *Id.* at 31-32. Father said that he had spoken with several other attorneys after filing the appeal, who

---

[2] In the interim, Mother filed a petition for contempt for Father's failure to comply with the November 14th order. As the contempt proceedings that followed are not part of this appeal, we shall not address them further.

Father asserts had declined to represent him on the basis of a conflict of interest, and so he was "forced to represent [him]self." *Id.* at 4; *see also* 31-32, 38. Father did not request a continuance to obtain new representation.

During the hearing, Father testified upon cross-examination by Mother's attorney and in response to direct questioning by the Master. He stated that he has been disabled since 2010, and that he stopped working due to his disability in 2014, after his adult sons had stopped helping him. *Id.* at 18-19. He testified that he had had little income in 2015, and no income in 2016, and therefore had not prepared tax returns for those years. *Id.* at 8. His 2014 tax return was entered into evidence as proof of his income. *Id.* at 37. He testified that he also received monthly income from a rental property. *Id.* at 20-21. In addition, Father admitted that he had increased the amount due on the monthly mortgage payment by withdrawing additional funds on the same credit line for personal use. *Id.* at 22-26, 30, 33-36.

Father was unable to provide evidence of his disability by way of a physician's form. Mother presented a physician's form from Father's primary care provider that described Father's ailments but stated that Father had not been evaluated for a disability. *Id.* at 12. Father testified that he has been trying to find a doctor to fill out a form stating he was disabled, and presented a letter stating that his primary care provider does not do disability assessments. *Id.* at 13-15, 33, 38-40. He confirmed that he did not have an appointment with a doctor scheduled as of the time of the hearing. *Id.* at 13-14. Father attempted to introduce older medical reports, but as none of them

were verifications of a disability, the court did not consider them. *Id.* at 40-42. Father testified as to the extent of his injuries. *Id.* at 18-19. He admitted that Social Security had determined he is not disabled. *Id.* 15-16, 20.

Mother testified that she has been living with Child in her friend's basement, where she does not pay rent, and that she has no income. *Id.* at 43-44, 56.

Five days after the hearing, on February 13, 2017, Father's counsel of record filed a praecipe to withdraw her appearance, stating that Father had requested that she not represent him.

On February 23, 2017, the Master entered a Report and Recommendation. The Master found that Father had willfully reduced his income, as he could provide no medical document specifying that he is unable to work. The Master set his earning capacity as $17,000 annually, based on the findings of the conference officer, not including the monthly income from the rental property. The Master concluded that Father's monthly mortgage credit should be set as the amount due before Father had increased the balance by withdrawing additional funds. After considering the amount Father paid annually for real estate taxes and homeowner's insurance and Father's filing status, the Master calculated his monthly net income for support purposes as $1,783.52, and recommended the court order Father to pay $406.36 in spousal support and $429 in child support, effective August 9, 2016. The Master also recommended Father be ordered to pay ten percent of his combined obligation, $83.54, towards his arrearages.

That same day, the trial court issued an order approving the Master's Report and Recommendation.[3] The next day, the trial court issued a corresponding administrative order putting support in place.

The parties were given until March 16, 2017, to file exceptions. Father filed timely *pro se* exceptions on March 16, 2017, stating that he had a medical evaluation scheduled for April 18, 2017; that Mother's Social Security determination said she could perform "sedentary work"; and that there had been a change to the mortgage payments. He also stated that he had been unable to prepare information because he had no representation, and requested an extension to file exceptions.

Father filed additional exceptions through new counsel on March 20, 2017. The exceptions were dated March 16, 2017, and date-stamped by the court on March 22, 2017. In these exceptions, Father argued, *inter alia*, that Father has no earning capacity aside from the rental property and that the doctors' reports Father presented should have been sufficient proof that he was disabled.

On May 10, 2017, Father filed a Motion to Suspend the support order based on after-discovered evidence and lack of due process. Father provided a physician's information form and a functional capacity evaluation, both dated April 28, 2017, stating that he was disabled. Father contended that these documents were after-discovered evidence on the basis of which the court

_____

[3] The order is time-stamped February 24, 2017, but is dated February 23, 2017.

should amend the support order. Father claimed he had been denied due process because he had been unrepresented by counsel at the February 8 *de novo* hearing before the Master.

The trial court denied Father's Motion to Suspend and Exceptions in a single order entered on August 24, 2017. Father appealed, and raises the following issues:

> 1. Did the trial court abuse its discretion and commit errors of law by denying [Father's] Exceptions and Motion to Stay Enforcement Of and Remand of an Order of Support[4] arising from a Support Master's Recommendations when the hearing of the Master violated due process because [Father] was forced to proceed *pro se* despite having an attorney and because he was not provided an opportunity to testify in his own right[?]
>
> 2. Was there insufficient evidence to sustain the order of support[?]

Father's Br. at 3 (answers below omitted).

Before we approach Father's issues, we address our jurisdiction over the appeal based on the appealability of the order in question. **See Kensey v. Kensey**, 877 A.2d 1284, 1287 (Pa.Super. 2005). Mother argues that Father filed for divorce approximately four months before the court entered the order denying Father's Exceptions and Motion to Suspend from which Father appealed. **See** Mother's Br. at 6. Mother attached the docket for the divorce action as an appendix to her brief; the docket shows that Father filed a complaint in divorce on April 21, 2017, under a separate docket number than

---

[4] Father's re-branding of his Motion to Suspend in his statement of questions has no effect on the appeal.

the support action. ***Id.*** at App. A. According to Mother, the divorce action rendered the spousal support order interlocutory and unappealable. ***Id.*** at 6-7 (citing ***Thomas v. Thomas***, 760 A.2d 397 (Pa.Super. 2000)).

Father does not dispute he filed for divorce prior to the court's entry of the order under appeal. Rather, Father argues that this Court cannot consider the divorce action because the certified record includes no reference to the divorce. Father's Reply Br. at 2. In the alternative, Father argues that we have jurisdiction to review the spousal support order because Father was deprived of due process at the support proceeding, and the resulting support order is therefore void. ***Id.*** at 3. Father also argues that postponing review of the spousal support order would result in financial hardship. ***Id.*** at 3-5. Father further contends that bifurcating review of the spousal support order from the child support order would defeat the purpose of the rule requiring this Court to defer review of spousal support orders until the divorce action is finalized, which is judicial efficiency. ***Id.*** at 5-6.

As we observed in ***Thomas***, "a spousal support order entered during the pendency of a divorce action is not appealable until all claims connected with the divorce action are resolved." ***Thomas***, 760 A.2d at 398. In ***Thomas***, the husband appealed the spousal support order after the wife filed for divorce. ***Id.*** at 399. We quashed the appeal of the spousal support order

because it followed the filing of the divorce complaint in the trial court. ***Id.***[5]

In the instant case, Father filed a complaint in divorce before the court ruled

on his Exceptions and Motion to Suspend the support order. Father's initiation

of a divorce action rendered the court's order relating to spousal support

interlocutory, and we therefore quash Father's appeal insofar as it relates to

spousal support.

We acknowledge that because the trial court assigned Father's divorce

action a separate docket number, the divorce action is not referenced in the

record of the support action. However, we have previously held that spousal

support orders are interlocutory for purposes of appeal if a divorce is pending,

even when the support and divorce actions are filed separately. ***See Leister***

***v. Leister***, 684 A.2d 192, 193-95 (Pa.Super. 1996) (*en banc*) (holding spousal

support action initiated by complaint filed separately from companion divorce

action is not to be differentiated from the divorce action for purpose of

deciding appealability of spousal support order). Further, the issue of the

appealability of the support order was not before the trial court. Therefore, no

record was created in that court on this issue. In this Court, Father has not

denied Mother's assertions that he filed for divorce before filing a notice of

appeal, and we have previously relied on statements made in parties'

appellate briefs in order to determine whether a divorce action is pending at

---

[5] We noted that where the converse occurs, and an appeal from a spousal support order is taken before the divorce complaint is filed, the support order is appealable. ***Thomas***, 760 A.2d at 399 (citing ***Hasson v. Hasson***, 696 A.2d 221, 222 (Pa.Super. 1997)).

the time of the appeal. *See Capuano v. Capuano*, 823 A.2d 995, 999 (Pa.Super. 2003). Pursuant to Pennsylvania law, we may also take judicial notice of the record of divorce proceedings between parties when necessary. *See Gantz v. Gantz*, 488 A.2d 17, 20 n.6. (Pa.Super. 1985). We therefore do not find the lack of reference to the divorce in the record of the support proceedings to be an impediment to our conclusion that a divorce action between the parties is pending, and that this affects the appealability of the support order.

We are also unconvinced that we should review the spousal support order because Father's claims sound in due process and denial of immediate review will result in economic hardship. We note that postponing review of spousal support until the corresponding divorce action is finalized, in addition to fostering judicial efficiency, generally "favors the indigent party by removing from the party with the greater resources the ability to engage in dilatory and costly litigation." *Leister*, 684 A.2d at 195. We cannot allow Father to stall resolution of the divorce case by appealing from the support order, despite his claim of economic hardship.

Although we quash Father's appeal insofar as he challenges the award of spousal support, we see no jurisdictional impediment to our review of the award of child support.[6] "Unlike spousal support, child support orders require immediate review 'to protect the interest of the child, to avoid hardship and

---

[6] Mother does not argue that the order of child support was not appealable.

to assure uninterrupted maintenance by [his or her] parents.'" ***Deasy v. Deasy***, 730 A.2d 500, 502-03 (Pa.Super. 1999) (quoting ***Ritter v. Ritter***, 518 A.2d 319, 322 (Pa.Super. 1986)); ***see also Capuano***, 823 A.2d at 998-99 (finding award of child support appealable prior to the entry of final divorce decree). Accordingly, the order of August 24, 2017, is appealable as it relates to child support, and we proceed to the merits of Father's issues.

## I. Father's Right to Due Process

Father argues that the court erred in denying his Motion to Suspend because the court violated his right to due process when it (1) forced Father to proceed *pro se* at the February 8 Master hearing, even though he had an attorney of record, and (2) did not give Father an opportunity to be heard. Procedural due process requires adequate notice, an opportunity to be heard, "and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." ***S.T. v. R.W.***, 192 A.3d 1155, 1161 (Pa.Super. 2018). Whether due process has been violated in any given situation "is a question of law for which the standard of review is *de novo* and the scope of review is plenary." ***Id.*** at 1160.

## A. Father's Right to Counsel

Father first argues that the Master violated his due process rights when she forced Father to proceed *pro se* at the *de novo* hearing without his attorney of record. Father argues that his counsel had not officially withdrawn

prior to the hearing, in contravention of Pa.R.C.P. 1012(b)(1).[7] Father claims he was abandoned by counsel, and contends that the Master erred in considering Mother's attorney's assertion that Father had told his attorney he did not want her representation, as it was hearsay. Father also claims that proceeding without counsel was unfair, because he was unable to competently present medical evidence to prove his disability and diminished earning capacity, and failed to adduce evidence regarding Mother's earning capacity. He asserts that a continuance in order to allow him to obtain counsel would have caused only minimal prejudice to Mother, since no prior continuances had been requested.[8]

It is well established that "[t]here is no right to counsel in divorce, custody, or support proceedings." **Karch v. Karch**, 879 A.2d 1272, 1274 (Pa.Super. 2005) (citing **Witt v. LaLonde**, 762 A.2d 1109, 1110-11

_____

[7] Father argues for the first time on appeal that he had a statutory right to counsel under 42 Pa.C.S.A. § 2501(a), which states "(a) Civil matters.--In all civil matters before any tribunal every litigant shall have a right to be heard, by himself and his counsel, or by either of them." 42 Pa.C.S.A. § 2501(a). He also argues that when his attorney failed to formally withdraw, she violated Rule of Professional Conduct 1.16. As Father failed to raise these arguments before the trial court, they are waived. **See** Pa.R.A.P. 302(a). However, we note that the plain language of § 2501(a) affords a litigant a statutory right to be heard by **either** himself **or** counsel. **Compare id. with** § 2501(b) (affording criminal defendants the right to be heard by himself **and** counsel). As the court heard Father, his statutory right to be heard by either himself or counsel was satisfied.

[8] He also argues that he should be afforded counsel because counsel is appointed for interstate support actions.

- 12 -

(Pa.Super. 2000)). And, although the Pennsylvania Rules of Civil Procedure require that counsel of record to request permission from the court before withdrawing from representation, *see* Pa.R.C.P. 1012(b),[9] the Rules do not state that where an attorney fails to do so, the case may not proceed. Indeed, to construe the rule in this manner would allow an obstructive or irresponsible attorney to frustrate the court process.

Not only is there no absolute right to counsel in support proceedings, this is not a situation in which counsel abandoned a party without notice. Rather, by his own admission, Father knew more than two months beforehand, as of December 1, 2016, that he would need new counsel for the hearing. The hearing did not occur until February 8, 2017, and Father testified that he had spoken with several other attorneys in the interim, but had been unable to find one to take his case. Father made no allegations to the Master that he was still attempting to acquire counsel, and did not request a continuance in order to do so. This was therefore not a case in which the actions of either the attorney of record or the court prevented a party from having counsel.

In addition, the trial court explained in its Rule 1925(a) opinion that Father had presented no evidence to the Master that he would be prejudiced by proceeding *pro se*, whereas Mother, who was in need of support, would

---

[9] ***See also Himes v. Himes***, 833 A.2d 1124, 1127 (Pa.Super. 2003) (holding counsel's failure to appear at a court proceeding prior to withdrawing under the rules is grounds for a finding of criminal contempt).

have been unduly prejudiced by a continuance, had the Master decided *sua sponte* to impose one. The trial court also explained its concern with preventing future cases where a party intending to delay a case could fail to take adequate steps to obtain counsel but oppose proceeding *pro se*. We observe, moreover, that the issues addressed at the hearing in this case were not complex, and Father had been on notice, as of the initial support conference in October 2016, that he required a physician's form verifying his disability.

Under these circumstances, we do not find that the action of the Master, in failing to *sua sponte* continue the hearing, deprived Father of due process. ***S.T.***, 192 A.3d at 1161; ***see also*** Pa.R.C.P. No. 218(b)(1) (providing that if a defendant is not ready and has no satisfactory excuse, the plaintiff may proceed to trial); ***Princess Hotels Int'l v. Hamilton***, 473 A.2d 1064, 1066 (Pa.Super. 1984) (finding court's refusal to grant continuance not an abuse of discretion where appellant waited until the week before trial to find another attorney and did not request a continuance until 4 days before trial).

Father argues that ***Karch*** does not establish that he has no right to counsel, because ***Karch*** was decided within a divorce, rather than support, context, and because, according to Father, ***Karch*** limited its holding as inapplicable to unwilling *pro se* litigants. We are unpersuaded that ***Karch*** affords Father a right to counsel in this case.

- 14 -

In **Karch**, we held that an order disqualifying counsel did not meet the criteria of an appealable order under the collateral order doctrine[10] where it did not completely deprive the defendant of the ability to be represented by counsel. **Karch**, 879 A.2d at 1274. We contrasted the facts of **Karch**, in which the plaintiff retained other counsel to represent him after the trial court disqualified his previous counsel, from those of **Vertical Resources, Inc. v. Bramlett**, 837 A.2d 1193 (Pa.Super. 2003), in which the court had disqualified the only attorney the defendant could afford in her pursuit of her petition to open judgment, effectively putting her out of court. **Karch**, 879 A.2d at 1274 & n.2. We recognized that in **Karch**, unlike in **Vertical Resources**, we were "not faced with a situation where a litigant will be either forced to proceed *pro se* or to withdraw the litigation if counsel is disqualified." **Id.**

**Karch** therefore recognized that a court should not take action that would thwart a litigant's ability to utilize counsel. However, **Karch** did not say that the litigant had the **right** to counsel. Nor did it address the circumstances of the instant case. Here, Father had notice of his counsel's intent to withdraw and opportunity to obtain new counsel, but failed to obtain new counsel, assert he was in the process of obtaining new counsel, or request a continuance to

_____

[10] Under the doctrine, an appeal can be taken from a collateral order, which is "an order separate from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." **Karch**, 879 A.2d at 1273-74 (quoting Pa.R.A.P. 313(b)).

obtain counsel. We cannot conclude that the action of the court thwarted Father's ability to obtain representation in the way contemplated by **Karch**.

Father also argues that **Witt v. LaLonde**, cited by **Karch**, recognized that parties to a custody case have a statutory right to counsel under 42 Pa.C.S.A. § 2501(a). We disagree.

In **Witt v. LaLonde**, the defendant appealed from an order that the parties attend a mediation session in their custody action without their attorneys present. 762 A.2d at 1110. The defendant argued that the order was appealable under the collateral order doctrine, as it affected her right to counsel. **Id.** We held that (1) there was no right to counsel in the civil proceeding, (2) a statutory right to counsel under 42 Pa.C.S.A. § 2501(a) was not implicated because mediation was not a court proceeding, and (3) postponing review until final judgment would not hinder the claim. **Id.** at 1110-11. We therefore did not hold, contrary to Father's assertions, that there is a statutory right to have counsel present in any civil court proceeding, such that the Master's failure to *sua sponte* order a continuance deprived Father of due process. We repeat that there is no such right, and that Father was not deprived of due process in this instance.

## B. Father's Opportunity to Present Evidence

The second portion of Father's argument is that he was deprived of due process when he was not given an opportunity to present his own case at the *de novo* hearing. According to Father, although he was invited to present documentary evidence, he was not given an opportunity to testify in his

defense. Father points out that at one point, the Master told Father to restrict his testimony to answering Mother's questions, because he would be given a chance to testify later. N.T. at 16. However, after he was cross-examined, the Master only asked him if he had exhibits to present, and not if he had additional testimony. *Id.* at 36-37. Father asserts that had he been permitted to testify, he would have explained his physical limitations. He cites **Capuano v. Capuano** for the proposition that "[a] *de novo* support case must be remanded when evidence is not received from both parties and there must be a full consideration of the issues as well as presentation of evidence." Father's Br. at 21 (italics added) (citing **Capuano**, 823 A.2d at 1003-04).

We first conclude that Father has waived this issue by failing to object at the time of the hearing. As Father failed to obtain counsel, he took the risks inherent with self-representation, including failure to preserve issues. **See Rich v. Acrivos**, 815 A.2d 1106, 1108 (Pa.Super. 2003).

However, were it not waived, this issue would not merit relief. Although the Master did not extend an explicit invitation for Father to present direct testimony following the close of Mother's case, the Master afforded Father ample opportunity to present evidence during both cross-examination by Mother's attorney and questioning by the Master. Father repeatedly explained that he was permanently injured but that he could not find a physician to verify his disability. N.T. at 13-15, 18-19, 33, 38-40. The Master allowed him to speak regarding his disability, even over the objection of Mother's attorney. *Id.* at 14. This is a far cry from the circumstances of **Capuano**, in which the

court wholly precluded evidence of the appellant's reduced income at the *de novo* support hearing. 823 A.2d at 999. We therefore hold that the Master did not deprive Father of an opportunity to be heard.

As we have concluded that neither Father's lack of representation nor the format of the *de novo* hearing offended Father's due process rights, Father's first issue is without merit.

## II. Sufficiency of Evidence

In his second issue, Father argues that there was insufficient evidence to sustain the order of support. Prior to addressing the merits of these contentions, we address Mother's argument that they are waived, as Father's exceptions to the Master's Report and Recommendation were untimely. Pursuant to Rule of Civil Procedure 1910.12, a party may file exceptions within twenty days of the date of the receipt or mailing of the report by the hearing officer, and matters not included are deemed waived. Pa.R.C.P. 1910.12(f). We have accordingly held that failure to file timely exceptions as required by the Rule results in waiver of the claims of error. *Metzger v. Metzger*, 534 A.2d 1057, 1058 (Pa.Super. 1987); *Sipowicz v. Sipowicz*, 517 A.2d 960, 963 (Pa.Super. 1986). This is so even where the trial court has not deemed the issues waived. *See Metzger*, 534 A.2d at 1058 & n.1; *Sipowicz*, 517 A.2d at 963; *but see In re J.W.*, 578 A.2d 952, 956 (Pa.Super. 1990) (declining to find waiver on the basis of untimely exceptions in parental rights termination case where claims would merely be postponed until collateral

ineffective assistance of counsel case, which would prevent sense of permanency for four children at issue).

Here, Father filed three timely exceptions, *pro se*: (1) Father asserted that he had a medical evaluation scheduled; (2) Father asserted that Mother could perform sedentary work; and (3) Father contested the valuation of mortgage payments. The first of these does not qualify as an exception, as it does not dispute any part of the Master's Report and Recommendation. Regarding the second and third issues, Father has not set forth argument on the merits of these claims in his appellate brief. Clearly, Father does not seek review of his timely-filed exceptions. Rather, Father presents argument related to the untimely exceptions filed by counsel four days after the deadline imposed by the Rule. As Father failed to comply with the Rule, we are constrained to conclude that his exceptions are waived. **See Metzger**, 534 A.2d at 1058; **Sipowicz**, 517 A.2d at 963.

However, were the issues not waived, they would merit no relief.[11] First, Father challenges the Master's finding that he was not disabled, as Father testified that he had no income and no earning capacity due to disability, and his testimony was allegedly uncontradicted. Father's claim fails, as the Master only found that Father had not presented sufficient proof that a disability caused his reduction in income. **See Laws v. Laws**, 758 A.2d 1226, 1229

_____

[11] In reviewing an order imposing support, we examine whether there is clear and convincing evidence that the trial court abused its discretion. **Capuano**, 823 A.2d at 999.

(Pa.Super. 2000) (confirming finding that appellant voluntarily reduced her income where she did not demonstrate she was unable to work full time rather than part time). Father was unable to provide a physician's verification of disability, and the Social Security Administration had denied Father's disability claim.

Second, Father argues that the earning capacity of $17,000 assigned by the Master was invalid, not only because the Master ignored the evidence that Father had no earning capacity due to disability, but also because the Master based that number upon the earning capacity assigned to Father in the 2015 support action without making her own investigation into Father's age, training, or history of employment under Pa.R.C.P. 1910.16-2(d)(4). This claim is without merit. The Master did not base her calculation on the findings of the conference officer in the 2015 support action; rather, the Master sustained the earning capacity found by the conference officer, not three months earlier, based on Father's 2014 federal tax income return and the range of annual incomes reflected in Father's Social Security earning statements from 2008 and 2012. This was not an abuse of discretion.

Third, Father complains that the court erred in finding that he willfully reduced his income, when Father had testified that his disability caused him to cease all work after his sons stopped assisting him in 2014. This claim fails, as there was sufficient evidence that Father had voluntarily reduced his income. Father was unable to present medical evidence to substantiate his

disability and had made no effort to find any form of employment. ***Laws***, 758 A.2d at 1229.

Finally, Father contends that the court abused its discretion in refusing to consider Father's disability statements provided with his Motion to Suspend as after-discovered evidence. This was not an abuse of discretion. The trial court concluded that the evidence had not been presented to the Master, or even to the court within the period for filing exceptions. The court considered that the Rules impose deadlines in order to ensure the immediate and timely resolution of support matters. Moreover, Fathers disability statements cannot be considered "after-discovered evidence," as they could have been obtained through the exercise of reasonable diligence. ***See League of Women Voters of Pennsylvania v. Commonwealth***, 179 A.3d 1080, 1087 (Pa. 2018). The court was correct not to alter the Master's Report and Recommendations on the basis of the new evidence, and to direct Father to instead file a petition for modification of support.

Having found no basis on which to grant Father relief, we affirm the order of the trial court insofar as it relates to child support. As explained above, we quash Father's appeal from the portion of the trial court's order relating to spousal support. ***See Hrinkevich v. Hrinkevich***, 676 A.2d 237, 242 (Pa.Super. 1996) (quashing in part and affirming in part).

Order affirmed in part (as it pertains to child support). Appeal quashed as interlocutory (as it relates to spousal support).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/05/2019</u>