Matter of Shawanda R. (2007 NY Slip Op 27350)

Matter of Shawanda R.

2007 NY Slip Op 27350 [17 Misc 3d 437]

August 24, 2007

Danoff, J.

Family Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, November 14, 2007

[*1]
In the Matter of Shawanda R.
Family Court, Kings County, August 24, 2007

APPEARANCES OF COUNSEL

Rick Stein, Brooklyn, for petitioner father. Cohen & Funk, P.C., New York City (Karen Funk of counsel), for respondent mother. Emmanuel F. Ntiamoah, New York City, Law Guardian.

{**17 Misc 3d at 438} OPINION OF THE COURT

Susan S. Danoff, J.
On March 28, 2007, the petitioner father filed an application for approval of an instrument of surrender, pursuant to Social Services Law § 384, concerning the subject child, Shawanda R., born in 1990. This application had the support of the 16-year-old subject child and the respondent mother. However, the application presented the unique situation where a parent files a petition for judicial surrender when there is no neglect or adoption proceeding pending in any court regarding the subject child. In fact, the only history these parties have had in Family Court has been support proceedings, first in the [*2]Child Support Enforcement Term in May 1996 when the petitioner father's paternity of the subject child was established and support was set.[FN1]

The court asked each counsel to submit a memorandum of law on this unique issue on or before June 15, 2007. On that day this court received a response only from the attorney for the respondent mother. The court reserved decision for July 20, 2007.
In her memorandum the attorney for the respondent mother argues for a "best interests analysis," citing Matter of Bennett v Jeffreys (40 NY2d 543 [1976]), contending that the petitioner father can move this court to terminate his parental rights on consent of all the parties and the court could find the petitioner father had permanently neglected the subject child, Shawanda, and find it would be in the best interests of the child to terminate the father's parental rights.{**17 Misc 3d at 439}
It is clear that this court does not have the power to approve a surrender under the circumstances presented here. As a court of limited jurisdiction, Family Court has only the jurisdiction and powers it was granted in New York Constitution, article VI, § 13 (b) and (c), or by statute. (See Family Ct Act § 115; Matter of Damon A., 61 NY2d 77 [1983]; Matter of Borkowski v Borkowski, 38 AD2d 752 [2d Dept 1972].) Family Court does not possess equity jurisdiction. (Matter of Adrianne F. v Anthony S., 8 Misc 3d 751 [Fam Ct, Kings County 2005].) However, the court should "strive to do equitable justice." (Matter of Carol J. v William J., 119 Misc 2d 739, 742 [Fam Ct, NY County 1983].)
A surrender as defined by statute is the commitment of one's child to the care and custody of the Commissioner of Social Services or an authorized agency for the purpose of adoption. (Social Services Law § 384 [1]; Domestic Relations Law § 109 [7].) When a surrender is requested by a parent of a child who is not in foster care, it is a social services official who must determine whether a surrender would serve the child's best interests. (18 NYCRR 421.6 [j].) Neither the Administration for Children's Services nor an authorized agency is a party in this surrender. This matter is not an application for approval of a surrender as defined by statute. Thus, the approval of this "surrender" must be denied.
Once the approval of a judicial surrender has been denied, the court's jurisdiction generally ends. However, the respondent mother requests that, on consent of all the parties, the petitioner father in the surrender proceeding be allowed to move this court to terminate his paternal rights.
The respondent mother presents the facts of this matter as a basis for seeking court action, and relies on the gravamen of Family Court proceedings, citing the standard "the best interests of the child." (See Matter of Bennett v Jeffreys, 40 NY2d 543, 546 [1976] [where the Court of Appeals held in extraordinary circumstances, the best interests of the child are superior to a parent's right to custody].) The respondent mother requests that this court hold a full hearing and upon finding the petitioner father has permanently neglected his daughter, Shawanda, terminate the petitioner father's parental rights, as in the best interests of the subject child.
It is uncontested that the petitioner father has not met his parental obligation to his daughter nor established a parent-child relationship with her. The respondent mother argues the [*3]payment for the support of the child by the petitioner father{**17 Misc 3d at 440} was only $150, paid in court at the proceeding for violation of support. (See n 1.) Respondent mother protests that even though her daughter and the child's father have lived in separate apartments at the same address, the petitioner father would "ignore her or tell her to tell her mother to stop bothering him about child support." The respondent mother contends the petitioner father has never acted as his daughter's father, and never introduced her to anyone as his child even though he would introduce other children as his own in her presence. The respondent mother maintains the petitioner father has not supported his daughter financially, physically or emotionally, and as a result the subject child has suffered emotionally from her natural father's abandonment. The consent of Shawanda and the respondent mother was submitted with the application for approval of the surrender.
The respondent mother's attorney states a careful search of case law did not reveal a case "directly on point," asking the court "to analogize this case to neglect and adoption cases under the Bennett v Jeffreys analysis." The respondent mother's reliance on this case law is misplaced. Matter of James R. (174 Misc 2d 133 [Fam Ct, Queens County 1997]) is a case where the care and custody of a homeless child is rejected by her noncustodial father, after a neglect finding against her custodial mother, and a finding of neglect is made against him pursuant to Family Court Act § 1012 (f) (i) (A). This is not the situation here where the subject child appears to be well cared for by her natural mother. Nor does the issue of diligent efforts to reunite a respondent parent with his child by a social services official arise in this matter as it did in the respondent mother's cited case of Matter of Sarah TT. (294 AD2d 627 [3d Dept 2002], lv denied 98 NY2d 611 [2002]). A "permanently neglected child" is defined as a child in the care and custody of an authorized agency whose parent or custodian has failed "substantially and continuously or repeatedly to maintain contact with or plan for the future of the child" over a statutorily defined period of time. (Social Services Law § 384-b [7] [a].) Such "diligent efforts" are a part of the definition unless such efforts are determined by the Family Court not to be necessary. In the matter before the court there is no authorized agency to make "diligent efforts" or to move before the court to find them unnecessary.
The only case law dealing with a court's jurisdiction cited by the respondent mother was Matter of Unborn Baby B. (158 AD2d 455 [2d Dept 1990]). The Second Department dismissed the appeal{**17 Misc 3d at 441} of an order entered on consent, as no appeal would lie, and found the issue of the Family Court's subject matter jurisdiction academic as the birth mother had consented to the termination of her parental rights in a separate guardianship proceeding. The circumstances there do not reflect the circumstances here.
Finally, the respondent mother cites Matter of Patricia A.W. (89 Misc 2d 368 [Fam Ct, Kings County 1977]) for the proposition that "when a case presents unique facts, the court must interpolate and innovate while staying within the letter and spirit of the law." (Mem of law, point I, ¶ 7.)
Neither the letter nor the spirit of the law would allow the petitioner father to move to terminate his own parental rights. This matter cannot be analogized to neglect and adoption proceedings. The State has not determined it should exercise its role as parens patriae and have the court intervene in the family of this child. Such court intervention would mean placing the child in foster care and when attempts at nurturing family relations did not work, terminating parental rights with the goal of adoption. (See Social Services Law § 384-b [1].) The petitioner father does not [*4]have standing to initiate the judicial termination of parental rights, nor could this court order its initiation under the circumstances set forth here.[FN2]

(Social Services Law § 384-b [3] [b].) To entertain such a motion by the petitioner father would not be a just resolution of this family's problems. It would be the total misuse of this court's powers and jurisdiction. Consequently, this court cannot consider such a motion by the petitioner father.
The respondent mother is the party who thinks legally ending the parent-child relationship between this daughter and her father would be in the child's best interest. The person who would lose his parental rights and obligations is a person who has refused to exercise them. It seems apparent that the petitioner father filed the surrender at least in part to forfeit his support obligation to the subject child. Termination proceedings cannot be used to avoid financial responsibility to a child. (Matter of Aida G. v Carlos P., 163 Misc 2d 423, 429 [Fam Ct, Queens County 1994].) The respondent mother may again file a petition alleging a violation of the order of support. Upon proof of the petitioner father's continued failure to support the child since the finding of a wilful violation in 2006, the respondent{**17 Misc 3d at 442} mother may enforce the order of support by income execution or deduction requiring the petitioner father's employer to pay support by deducting it from the father's pay check, pursuant to Civil Practice Law and Rules § 5241 or § 5242; or sequestration (Family Ct Act § 457); or undertaking (Family Ct Act § 471); or upon a finding of wilful violation, the petitioner father could be incarcerated for up to six months or placed on probation (Family Ct Act § 454 [3]), or held in contempt of court.[FN3]

For the reasons stated above the proposed application for approval of an instrument of surrender filed by the petitioner father cannot be allowed and is hereby dismissed with prejudice. Thus, the Family Court cannot entertain the petitioner father's proposed motion for the voluntary termination of parental rights.

Footnotes

Footnote 1: Thereafter, on September 13, 2006, Kings County Support Magistrate Elizabeth Shamahs found the respondent father wilfully violated the order of support. The Support Magistrate entered a money judgment against the respondent father in favor of the petitioner mother in the amount of $8,244. The Support Magistrate continued the order of support at $36 weekly, payable to the petitioner mother through the Support Collection Unit.

Footnote 2: The Family Court may direct the Law Guardian to initiate a termination of parental rights proceeding if the authorized agency fails to do so within the time fixed by order of the court. (Social Services Law § 384-b [3] [b].)

Footnote 3: The respondent mother did file a petition to enforce a support order on January 31, 2007, but when she did not appear on the adjourn date, the Support Magistrate dismissed the petition, without prejudice.