J-A18039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MING LIANG LI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIXIA PAN | : | No. 93 WDA 2019 |

Appeal from the Decree Entered December 19, 2018
in the Court of Common Pleas of Allegheny County
Family Court at No(s): FD-16-007099-008

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED SEPTEMBER 30, 2019**

Ming Liang Li ("Husband") appeals from the Order equitably distributing the marital assets of Husband and Lixia Pan ("Wife"), which was made final by the entry of the December 19, 2018 Divorce Decree. We affirm.

Husband and Wife married on August 3, 2014, in a traditional Chinese wedding ceremony, in New York. During the wedding, Husband and Wife received over $135,000.00 in U.S. currency, Chinese currency (RMB) worth approximately $28,000.00 in U.S. currency, and several pieces of gold jewelry. The funds also included a $50,000.00 check from Wife's mother, which was intended to be used as a down payment for a marital home.

Two days after the wedding, Husband returned to Pittsburgh, Pennsylvania, while Wife remained in New York to complete her undergraduate degree. Husband and Wife visited one another occasionally

until February 2015. During the approximately 6 months that they were married, Husband and Wife spent less than 30 days together.

Husband filed a Complaint in Divorce on January 14, 2016, asserting that the marriage was irretrievably broken. On March 18, 2016, Wife filed a Petition Raising Claims, seeking equitable distribution, alimony, and counsel fees and expenses. Following a procedural history that is not relevant to the instant appeal, the trial court conducted a hearing, and determined the date of separation to be February 17, 2015.

On August 31, 2017, Husband filed an Affidavit pursuant to Section 3301(d) of the Divorce Code, asserting that the marriage was irretrievably broken, and that the parties had lived separate and apart for at least two years. Wife filed a Counter-Affidavit on September 8, 2017, opposing the entry of a divorce decree, and indicating her wish to pursue claims for economic relief. The trial court referred the matter to a Hearing Master, scheduled a hearing, and directed the parties to file pre-trial statements. Husband and Wife timely complied.

Following a hearing, the Master issued a Report and Recommendation. The Master first described the process by which Husband and Wife received their wedding gifts as follows:

> The parties had a traditional Chinese wedding at a restaurant in New York City's Chinatown. Gifts (usually money contained in a traditional red envelope) [were] brought by the 200 guests and were collected at the door by Husband's uncle.[FN] Members of the family, first Husband's and then Wife's, [were] called individually to present their gifts directly to the bride and groom. These gifts

may include cash, checks, [RMBs] [] or jewelry. A member of [Husband's] family collected the gifts given by [Husband's] family[,] and a member of Wife's wedding party collected the gifts given by Wife's family. There [was] a Master of Ceremonies who call[ed] each of the family members to come up[,] and then announce[d] the gifts as they [were] presented. A video showing this gift[-]giving ceremony was provided at the hearing[,] and a translation of the Chinese [testimony] was read into the record. … The Master of Ceremonies announced that the $100,000 check given to the parties by Wife's [m]other was in American dollars. Husband's uncle paid for the Master of Ceremonies and for the videographer.

---

[FN]  When all of the guests [had] arrived, the envelopes [were] opened and the gifts [were] detailed and recorded in a red book. … The total amount recorded was $29,655. A portion of this money [was] applied to the costs of the ceremony, banquet, *etc.*[,] and the remainder [was] … gifted to [Husband and Wife]. $20,300 was paid to the restaurant, $1[,]100 to a wedding center, $660 to a bakery, leaving $7,595 for distribution to [Husband and Wife].

---

Master's Report and Recommendation, 4/6/18, at 2-3 (footnote in original).

The Master also outlined the following evidence and testimony:

- In total, Husband and Wife received checks totaling $135,500.00 in U.S. currency, and RMBs worth approximately $28,217.05; Wife received 16 gold bracelets, 5 gold rings and 12 gold necklaces; Husband received 1 necklace. *Id.* at 3.

- In addition to the check Wife's mother gave to Husband and Wife, Wife's Mother gave a $50,000.00 check to Husband's father, to be used as a down payment on a marital home. No house was ever purchased for Husband and Wife, but the money was never returned to Wife's mother. *Id.*

- Wife's brother later drove her to Pittsburgh to pick up her belongings (including cash she had left during a previous visit), but Husband would not allow them to enter his apartment. When Wife called the police, Husband stated that he had thrown away Wife's things, and did not have her money. *Id.* at 4, 7.

- Wife testified that Husband had been unwilling to make plans for her to move to Pittsburgh, even after she had graduated. *Id.* at 6.

- After Husband filed the Complaint in Divorce, his ownership in his beer distributorship was transferred to his aunt; however, Husband continued to manage the store, complete the ordering, and pay the bills. *Id.*

Additionally, the Master made the following conclusions and credibility findings:

- The Master discredited Husband's assertions that the checks presented during the wedding were strictly "ceremonial." *Id.* at 3 n.3.

- Although Wife's mother gave Husband's father a $50,000 check to use as a down payment for a marital home, no home was purchased. The Master believed that Husband's father and mother used the money to purchase their own home, just a few months after the wedding, or for their own personal use. *Id.* at 3-4, 8.

- The refusal of Husband's father to appear at the hearing indicates the truth of the allegations.  ***Id.*** at 5.

- Husband threw away Wife's belongings, but did not throw away the cash.  ***Id.*** at 4, 7.

- "The Master found Wife credible and Husband evasive…."  ***Id.*** at 9.

Based upon the foregoing, the Master recommended that (1) Husband owes Wife $6,506.00, to be paid in 12 installments, for her personal items; (2) Husband will be responsible for any legal fees Wife incurs incident to collecting these payments; (3) Husband must pay Wife $14,208.30 in U.S. currency, in 28 installments, for his father's use of the couple's Chinese currency; (4) Wife's gold jewelry must be returned to her, or Husband must pay Wife $750; and (5) Husband owes Wife $50,000, in the form of a Judgment Note in alimony,[1] for the remaining money the couple received as wedding gifts, to be paid in installments of $5,000 per year.  ***See id.*** at 7-9.

On April 25, 2018, Husband filed Exceptions to the Master's Report and Recommendation, asserting that the Master erred in identifying and valuing the marital property subject to distribution.  The trial court conducted a

---

[1] The Master also recommended that "[a]ny money not paid in that single year or any subsequent single year … shall be added to the funds required for the next year and those funds shall accrue interest at 4.5% annually."  Master's Report and Recommendation, 4/6/18, at 9.

hearing on the Exceptions. By an Order entered October 19, 2018, the trial court dismissed Husband's Exceptions, and adopted the Master's Report and Recommendation.[2]

Husband filed a Notice of his intention to seek entry of a final divorce decree on October 31, 2018, after which Wife again filed a Counter-Affidavit pursuant to Section 3301(d) of the Divorce Code, opposing entry of a divorce decree, asserting that the marriage was not irretrievably broken, and indicating her wish to pursue economic claims. The trial court entered a Divorce Decree on December 19, 2018. Husband filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Husband raises the following issues for our review:

I. Did the trial court err when, as part of the equitable distribution scheme, it ordered Husband to execute a judgment note for $50,000[.00] against his will and in violation of his constitutional right to due process of law?

II. Did the trial court err when, as part of the equitable distribution scheme, it ordered Husband to pay each of the cash awards of $50,000[.00], $14,108.30, $6,455.75, $6,506[.00], and $750[.00] to Wife[,] without making any finding[s] of fact, and without any proof[] that any marital property existed on the date of separation, or that Husband dissipated any marital property?

Husband's Brief at 4.

_____

[2] In its Order, the trial court also dismissed the Cross-Exceptions filed by Wife. However, no Cross-Exceptions appear in the certified record, nor does the docket reflect that any were filed.

In his first claim, Husband argues that the trial court erred by ordering him to execute a $50,000.00 Judgment Note as part of the equitable distribution scheme. *Id.* at 9. Husband claims that a court may not enter judgment and award interest in a divorce proceeding, without first conducting a hearing on an alleged failure to comply with an equitable distribution order. *See id.* at 10-14. Husband also contends that judgment notes may not be entered against natural persons, and may not be used in a divorce proceeding. *See id.* at 14-20. Additionally, Husband argues that he cannot be forced to execute a judgment note against his will. *See id.* at 20-22.

The trial court deemed Husband's first issue waived, because he failed to raise it in his Exceptions. *See* Trial Court Opinion, 4/1/19, at 5. Our review reveals that Husband's Exceptions include a bald allegation that the Master erred in awarding Wife $50,000.00 (a portion of the total funds received during the wedding), and ordering Husband to execute a Judgment Note in that amount, in the nature of alimony. However, Husband failed to identify in the Exceptions *why* he believes the Master erred. In his Concise Statement, Husband raised, for the first time, his claim that the directive to execute the Judgment Note violates his constitutional right to due process. Concise Statement, 2/13/19, at 1 (unnumbered). Because Husband did not raise his due process claim in the trial court prior to appeal, we agree that Husband's first claim is waived. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised

in the lower court are waived and cannot be raised for the first time on appeal.").

In his second claim, Husband challenges portions of the trial court's equitable distribution scheme ordering him to pay Wife various cash awards. *See* Husband's Brief at 22-72. As to each of the contested cash awards, Husband asserts that, prior to including such awards in its equitable distribution scheme, the trial court failed to make factual findings that (1) marital property existed on the date of separation; (2) Husband was in possession of any marital property on the date of separation; and (3) Husband dissipated any marital property. *See id.*

> [O]ur standard for reviewing awards of equitable distribution are well settled. The trial court has broad discretion in fashioning such awards, and we will overturn an award only for an abuse of that discretion. To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure. Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Hayward v. Hayward*, 868 A.2d 554, 557-58 (Pa. Super. 2005) (citations omitted). Further, "it is within the province of the trial court to weigh the evidence and decide credibility[,] and this Court will not reverse those determinations so long as they are supported by the evidence." *Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. 2011); *see also id.* at 455-56 (explaining that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question

of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." (citation omitted)).

Initially, as the trial court aptly noted in its Opinion, Husband's Concise Statement "is neither clear nor concise[,]" and "assails virtually every aspect of [the trial court's] decision[.]" Trial Court Opinion, 4/1/19, at 2. Nevertheless, in its Opinion, the trial court set forth the legal and factual basis for its decision, and addressed the sufficiency of the evidence supporting its decision as to the equitable distribution scheme. *See id.* at 7-10; *see also id.* at 6 (wherein the trial court reiterated that it adopted the Master's Report and Recommendation); Master's Report and Recommendation, 4/6/18, at 1-9 (wherein the Master summarized the relevant testimony, and set forth her relevant findings, credibility determinations, and conclusions). We agree with and adopt the trial court's Opinion regarding Husband's broad challenge to the propriety of the equitable distribution scheme. *See* Trial Court Opinion, 4/1/19, at 7-10. We specifically point out, as did the trial court, that "[t]here was a video introduced showing the gifts[;] there were contemporaneously prepared lists of the gifts which were counted by the couple[; and] there were endorsed checks…." *Id.* at 8. The trial court also specifically credited the evidence presented by Wife and her witnesses, and found Husband's testimony to be incredible. *See id.* at 8, 9. We decline to reassess the credibility of the witnesses, *see Childress*, 12 A.3d at 455, and we otherwise discern no abuse of the trial court's discretion. Therefore, Husband is not entitled to relief on this claim.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/30/2019

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Ming Liang Li,

              Plaintiff,

    v.

Ixia Pan,

              Defendant.

OPINION

No.:  FD-16-007099
       Sup. Ct. No: 93 WDA 2019

BY:

Honorable Cathleen Bubash
440 Ross Street
Suite 5036
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Caroline L. Vodzak, Esquire
1550 Brownsville Road
South Park, PA 15129

Counsel for Defendant:

Jeffrey L. Pollock, Esquire
1320 Shady Avenue
Suite 100(rear)
Pittsburgh, PA 15217-1340

1

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

Ming Liang Li,

Plaintiff,

v.

Ixia Pan,

Defendant.

No.: FD-16-007099
Superior Court No: 93 WDA 2019

OPINION

April 1, 2019                                    Judge Cathleen Bubash

Husband has filed this appeal from my October 17, 2018 which adopted the Equitable Distribution Report and Recommendation of the Special Master. My Order was made final by entry of the divorce decree. Because my decision is supported by law and based on the evidence presented at trial, particularly the credibility of the witness's testimony, it should be affirmed.

Preliminarily, I note that Husband's Statement of Matters Complained of on Appeal is neither clear nor concise as required by Pa.R.A.P. 1925(b). Husband assails virtually every aspect of my decision, including my (and the Master's) understanding of the law and role as fact finder. I shall address Husband's primary assertions - that my reasoning is not discernible from the record, that I ignored law and fact, and based my decision on legally insufficient evidence. In doing so, Husband's other voluminous, often duplicative complaints, will be substantially addressed.

2

## Background

The parties married in a traditional Chinese wedding in New York in August of 2014. The wedding guests gave the couple substantial gifts of cash, checks, and gold jewelry. Two days later, Husband returned to Pittsburgh. The parties visited sporadically until their February 2015 separation.[1] The parties spent less than 30 days together; hence virtually all of the property subject to equitable distribution came into their possession as wedding day gifts from their respective families. Husband filed for divorce in January of 2016. Wife raised economic claims. A hearing officer awarded Wife $700.00 per month in *alimony pendent lite* (APL) which I ordered terminated in July of 2017.

I referred the parties to a Special Master for trial on all economic issues. A Chinese interpreter was required at trial. Wife introduced a video of the presentation of the wedding gift, as well as an English transcription of the video. The video depicted wedding gifts of over $135,000 in U.S. dollars, Chinese currency (RMB) worth approximately $28,000.00[2], and gold jewelry.

Husband, Wife, Wife's mother, and her brother testified regarding the couple's wedding gifts and the efforts Wife made to access the property after separation. Husband testified regarding his employment and business interests. Both parties presented evidence that raised the strong inference that Husband's father took a good deal of the funds intended for the parties. Those funds included a $50,000.00 check from Wife's mother, which was intended as a down-payment for a marital home.

Wife testified that $55,000.00 in cash as well as gold jewelry was left in Pittsburgh with Husband and his family at Husband's request. (TR. 3/13/18 p. 39-

---

[1] The date of separation was determined by this Court to be February 17, 2015.
[2] $1.00 is equal to approximately 6.4 RMB. (TR. 3/8/18 p. 34)

3

40).[3] Husband refused Wife entry when she returned after separation to pick up personal items and property she considered hers. (TR. 3/8/18 p. 144). Husband testified that he "threw out" Wife's property. I did not find this testimony credible as to the jewelry and certainly not as to cash.

Husband's father did not appear at trial, despite the Master's repeated request that he do so in order to testify regarding his role in the unaccounted for wedding gift cash and checks. (TR. 3/8/18 p. 123, 177; 3/13/18 p. 3-9) Without his testimony, the testimony that Husband's father converted the monies to his own use was basically uncontradicted, as Husband offered no other explanation himself.

The Master recommended that each party pay half the fees for the translators and the video transcription, that Husband pay Wife $6,506.00, representing 25% of the value of the personal property which Husband claimed to have discarded, that he pay her $14,108.30, which is half of the amount of Chinese currency gifted at the wedding, and $6,445.75 which is half of the wedding cash (referred to as "red envelope money"), along with the return of Wife's jewelry or its $750.00 value. Lastly, she recommended that Wife be awarded $50,000.00 of the $55,000.00 which was in Husband's control when she returned to New York, to be paid as alimony secured by a judgment note, because over 80% of the funds were gifts made from Wife's family who occupied 17 of the 20 tables at the wedding (TR. 3/8/18 p. 96) and that the marriage was "absurdly" short. [4]

Husband filed 19 extensive exceptions which I dismissed on October 17, 2018, along with Wife's untimely filed exceptions, adopting the Master's

---

[3] Wife also testified that approximately $15,000.00 of the money left with Husband was her premarital money but , since it was to be used to buy a marital home, she included it in marital funds. (TR. 3/13/18 p. 99)

[4] Lastly, The Master opined that much of these funds could quickly be obtained by Wife if they were returned by Husband's father and suggested that Wife consider a separate civil or criminal action, because Husband's father is not under this Court's jurisdiction.

4

recommendations. Upon entry of the divorce decree, Husband filed this appeal. In response to my Order pursuant to Pa.R.A.P. 1925, Husband filed his Statement of Matters Complained of on Appeal. As his Statement is quite lengthy, it shall not be set forth here.

## Discussion

### 1. Deficiency of 1925(b) Statement/Waiver

Husband claims thirteen errors in his Statement, with separate sub-parts. His arguments, although quite convoluted, can be broken down into a few main points, to which all of his complaints relate. He argues that my Order is based on legally insufficient evidence, is contrary to law, and that it is flawed for not setting forth specific findings of fact.

Husband raises a number of specific assertions of error in this appeal for the first time. As they were not raised in Husband's exceptions, they should be deemed waived. "Matters not covered by exceptions [to a master's report and recommendation] are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters." **Pa.R.C.P.1920.55-2(b);**

As noted in the history above, Husband filed extensive exceptions from the Master's Recommendation; however he did not raise the following matters which appear in his 1925(b) Statement: That his "constitutional right to due process of law" was violated (#1); that it was error to order him to pay "$1,500.00 in preliminary counsel fees" (#6) or "$1,000.00 in counsel fees" (#7); that it was error to award Wife APL (#8) and to not limit the award's duration (#13)[5]; that it was

---

[5] I did, in fact, limit the duration of APL, terminating it prior to the Master's hearing.

5

error to find that Wife had zero income (#10) and Husband had net monthly income of $2,158.00 (#11).

Accordingly, those issues which Husband failed to raise in his exceptions are waived for appeal as they must be raised at the first opportunity. **Metzger v. Metzger**, 534 A2d 1057, 1058 (Pa. Super. 1987). This waiver is not avoided by husband's assertion that he "does not waive any issues, including those raised in his exceptions" at the onset of his 1925(b) Statement.

Rule 1925 is intended to aid trial judges and appellate courts in identifying those issues which the parties plan to raise on appeal, a crucial component of the appellate process. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." **Jones v. Jones**, 878 A.2d 86, 89 (Pa. Super. 2005). Husband's catch-all assertion that he does not "waive any issues," on its face, requires the Court to guess what issues he is actually appealing.

Husband raises the wording of Pa.R.A.P. 1925(b)(4)(vi) to avoid the requirement to clearly set forth the appealable issues by stating that "the reasons for the Orders are not readily discernible from the record." Because the reasons for my decision are actually quite discernible from the record, this exception is not available to Husband. I adopted the Master's Report and Recommendation, including her clearly stated findings that Husband's testimony was not credible, as well as her reasons for finding it so.

Pursuant to Pa. R.C.P. 1569(c), the court has the specific power to adopt and incorporate by reference the findings and conclusions of the master, without the need to repeat them in the decision. There is no justification for requiring me to restate the Master's findings when I have stated that I adopt them and declare my order to be final.

Accordingly, Husband's attempt to raise 1925(b)(4)(vi) to avoid the requirement that he clearly set forth each appealable issue fails. All issues not

6

previously raised in his exceptions, or not set forth in his 1925(b) Statement, should be deemed waived.

## 2. Legal and Factual Basis for Decision

Husband claims that I erred by "not making any finding of fact, and without any proof" that there was marital property which existed in Husband's possession at the date of separation and/or that it was dissipated by Husband. Husband's claim simply ignores the testimony presented at trial on which the decision was based, and ignores all credibility determinations regarding that testimony.

23 Pa.C.S.A. § 3501 defines marital property as "all property acquired by either party during the marriage." These parties were only briefly married but, on the date of their wedding In August of 2014, the parties were given cash, checks, Chinese currency, and jewelry, all of which immediately became marital property. Evidence of the receipt of the gifts was introduced via a video, as well as by lists prepared contemporaneously by the parties and family members. Wife credibly testified that a substantial portion of the property was in Husband's possession when she left Pittsburgh. Husband offered no credible explanation for where the property is now.

A particular item of marital property testified to was a $50,000.00 check from Wife's mother which was written to and cashed by Husband's father. Wife and Wife's mother testified that this money was to be for a marital residence for the bride and groom. (TR. 3/8/18 p.   ). Husband testified that the check was endorsed by his father and that he knew nothing of it. (TR. 3/13/18 p. 132-133). I found that it was credible that the money was for the couple, that all involved, including Husband and his Father, knew that purpose, and that Husband's father converted the money to his own use after the wedding, and that Husband allowed it. Husband had no credible alternative explanation and his father refused to appear.

7

Husband incorrectly claims there is no "proof" of the facts on which my decision regarding marital property is based. To the contrary. There was a video introduced showing the gifts, there were contemporaneously prepared lists of the gifts which were counted by the couple, there were endorsed checks, and there was testimony. I found the testimony proffered by Wife and her witnesses to be credible evidence and believable, and, conversely, Husband's testimony not to be so.[6]

Husband's failure to call his father to testify regarding the missing wedding funds which were in his possession raises an adverse inference. "[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *O'Rourke on Behalf of O'Rourke v. Rao*, 602 A.2d 362, 363 (Pa. Super. 1992). Husband offered no other credible explanation for the disappearance of the funds other than that he willingly gave the funds to his Father or, at the least, did not demand their return. There was also evidence that Husband is benefiting from this, by living in the home his father purchased after the wedding.

Husband also incorrectly claims my decision was contrary to law. He states that since there was no "proof" that the property was in his physical possession at the time of distribution, it cannot be distributed as marital property. In Pennsylvania, marital property which is disposed of *in good faith and used to satisfy marital debts* is excluded when distributing marital property. See, *Wayda v. Wayda*, 576 A.2d 1060, 1068 (Pa. Super. 1990) (emphasis added). In this case, Husband did *not* dispose of the marital property in good faith - Husband instead

---

[6] For example, Husband testified that he took a train from Pittsburgh to New York City, carrying over $63,000.00 in cash in a shoulder bag – money he had earned over his entire lifetime but of which he has no record because it was never deposited in any bank – and that he handed that money to Wife's mother on the street in New York, in front of a "big building." I found this testimony to be unbelievable.

8

disposed of marital property to enrich his family and/or himself. The value of the property the parties received at their wedding was, therefore, properly subject to equitable distribution, whether that property was in Husband's physical possession or that of his family.

### 3. Insufficiency of the Evidence

Husband's other argument is that I based my decision on legally and factually insufficient evidence. He states the awards to Wife were based on "no evidence and/or contradictory evidence from one witness or one party's witnesses" and "evidence was so lacking as to make the awards fundamentally unfair and manifestly unjust." Again, Husband is incorrect. The parties offered conflicting testimony and I found one side to be more credible than the other.

In determining whether the evidence is legally sufficient to support a factual finding, an appellate court generally considers only the evidence supporting the finding to determine if competent evidence was presented at trial to support reasonable findings. If so, the decision should not be second-guessed.

Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. **Helpin v. Trustees of Univ. of Pennsylvania**, 969 A.2d 601, 609 (Pa. Super. 2009), aff'd, 10 A.3d 267 (Pa. 2010). In this case, both parties presented their evidence, mostly through their own testimony, and I weighed their credibility and the conflicts in their testimony in reaching my decision, as did the Master.

And while "the findings of fact and the recommendations of the Master are usually considered as only advisory, an exception is made where the issue is one of credibility and the master is the one who heard and observed the witnesses. In that situation, the findings of the master should be given the fullest consideration." **Mintz v. Mintz,**, 392 A.2d 747 (Pa. Super. 1978)(citations omitted).

9

"[G]reat weight must be accorded to the findings of the court or master below if the issues of credibility are ones that are necessarily resolved by personal observations. For example, if the ultimate decision rests on a statement asserted by one party and denied by the other, where there is no corroborative evidence, demeanor on the stand is necessarily dispositive of the issue and is the kind of evidence that cannot effectively be reviewed by an appellate court." *Id* at 749.

In this case, although Wife's testimony was hindered by her language barrier, her description of the events that transpired rang true. Conversely, Husband's conflicting account was not persuasive. Further, his testimony that he "does not control his father" does not give him the right to allow his father to take Wife's fair share of the marital property.

### 4. Husband's Ability to Pay

Husband complains that no consideration was given to his ability to pay Wife as ordered. He was ordered to pay Wife her share of the marital estate over time in equitable distribution, with $50,000.00 in the form of alimony secured by a judgment note. Additionally, although Husband testified that he earns only $2,000.00 per month working at a beer distributorship, it is a beer distributorship which he owned himself but conveyed to his mother for $1.00 after the parties separated. (TR. 3/13/18 p.198 – 210). Prior to the conveyance, he operated as the owner/manager and took all end of the year profits as income. His testimony raises the inference that the business was transferred to avoid equitable distribution or support or both and that Husband has an artificially low income.

Accordingly, I did not find that requiring Husband to pay the award to Wife under these circumstances was an unfair burden[7]. I did not find his testimony regarding his income to be truthful. Husband lives with his parents, earns an

---

[7] This is all the more true when, as noted by the Master, Husband could demand the funds due to Wife from his father, who converted them.

artificially low income, and has the ability to earn a higher income elsewhere. The funds which are the subject of the award were in Husband's control at the time of separation. Husband's protestations that he has no control over his father may be true but Wife should not be forced to forgo her fair share of the marital gifts, the majority of which came from her family members, because Husband will not or cannot stand up to his father.

I also found it equitable that Husband be required to share in the cost of the translators. Although Husband may not have required a translator to understand the questions posed to him in English, his attorney could not have effectively cross examined Wife or her family, nor understood the video without the presence of a translator.

## Conclusion

Because my October 17, 2018 Order was based on my credibility determinations regarding the testimony of the parties at trial, and is consistent with the laws of the Commonwealth regarding equitable distribution, it should be affirmed.

BY THE COURT:

_____ J.